Andrew V. Wyczalkowski,
trustee and individually

v.

Brian D. Carter,
Carin Carter,
and Anna M. Furnival

May 5, 2009

Case No. (Civil) 51125

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on January 22, 2009, and March 9, 2009, for hearing and argument on the various motions filed by the Defendants asking the Court to set aside a default judgment and allowing the Defendants leave to file responsive pleadings.

For the reasons hereinafter set forth, the motions are denied.

*Facts and Procedural History*

On August 1, 2008, the Plaintiff, Andrew V. Wyczalkowski, individually and as Trustee, filed a Complaint against the Defendants, Brian D. Carter, Carin Carter, and Anna M. Furnival, asking the Court to construe the rights under the Declaration of Trust of the Marcin R. Wyczalkowski Revocable Trust dated June 21, 2007 (the "Trust").

Brian Carter was served personally by a private process server in Arizona on August 14, 2008. Carin Carter was served by substitute service on Brian Carter by private process server in Arizona on August 14, 2008. Anna

Furnival was served personally by private process server in Virginia on August 29, 2008.

Under Rule 3:8, the Defendants were required to file their responsive pleadings within 21 days after service. Therefore, the responsive pleadings of Brian and Carin Carter were to have been filed on or before September 3, 2008, and the responsive pleadings from Anna Furnival were to have been filed on or before September 22, 2008.

Fifteen days after they were served, Brian and Carin Carter contacted an attorney, David Zachary Kaufman, of Fairfax, Virginia. They discussed the case by telephone on August 29, 2008. Mr. Kaufman agreed, as a courtesy to potential clients, to contact counsel for the Plaintiff and request an extension of time to file responsive pleadings. Mr. Kaufman advised Mr. and Mrs. Carter that he would be sending a retainer letter and needed a $25,000.00 deposit (retainer) to be returned.

On Saturday, August 30, 2008, Mr. Kaufman sent a retainer letter (see Defendants' Exhibit 1) to be signed by all three defendants and returned with a deposit of $25,000.00. On the same day Mr. Kaufman e-mailed Mr. and Mrs. Carter that he would "get an extension on Tuesday and call or write to let you know how that goes." The next Monday was Labor Day.

The most pertinent part of the retainer letter agreement is on page two, as follows:

> When this Agreement takes effect:
> This Agreement will not take effect, and neither KL nor David Zachary Kaufman will provide legal services, until they receive back from you a signed copy of this Agreement, and the $25,000.00 deposit as specified above. This deposit may be paid in cash, by money order, by certified check, or by personal check. If paid by check, the check must clear before KL and David Zachary Kaufman are obligated to begin work.

"KL" refers to Kaufman Law, Mr. Kaufman's firm.

On Tuesday, September 2, 2008, Mr. Kaufman spoke by phone with Mark D. Herring, who, with Jennifer R. Dillow, is representing the Plaintiff. Mr. Herring agreed to an extension of time to file responsive pleadings until September 19, 2008. Mr. Kaufman verified the extension by an e-mail the same day to Mr. Herring, which read:

Dear Mark:

Thank you for your courtesy in granting me a 2 week extension of time to file an Answer in the case of Wyczalkowski v. Carter *et al*. I will have an answer for you (assuming I actually am retained) by c.o.b. September 19th.

If this is in any way an incorrect recollection of our conversation, please let me know.

Dzk.

Mr. Kaufman e-mailed Mr. and Mrs. Carter on September 2, 2008, advising them that he had "obtained a 2 week extension of time – to c.o.b. 9/19 (which amounts to 9/22)." See Defendants' Exhibit 3.

By September 2, 2008, the Carters had received the retainer letter from Mr. Kaufman because, on that date, Brian Carter e-mailed Mr. Kaufman asking for some "alterations to the retainer letter." See Defendants' Exhibit 5. Most significantly, Mr. Carter asked Mr. Kaufman to start work once he had received $15,000.00. Mr. Carter also stated that he would have the remaining funds to Mr. Kaufman in ten working days.

On September 4, 2008, Mr. Kaufman e-mailed the Carters stating, "I agree to start work when I have the $15,000.00. I will not enter my appearance in the case until the full amount is paid." See Defendants' Exhibit 5. Later, on September 4, 2008, Mr. Kaufman e-mailed Mr. Carter stating, "I've got 2 checks now. I'll confer w/Warren [Grossman, another attorney] tomorrow & begin work." See Defendants' Exhibit 6. The "2 checks" referred to by Mr. Kaufman in his e-mail were a $5,000.00 check from Brian Carter and a $10,000.00 check from Ms. Furnival. The checks were not deposited and credited to Mr. Kaufman's trust account at BB&T Bank until September 12, 2008. See Defendants' Exhibit 13. Mr. Kaufman's invoice for the services he seeks to be compensated for shows that he received the funds from Mr. Carter and Ms. Furnival on September 11, 2008. See Defendants' Exhibit 23.

On September 8, 2008, Mr. Kaufman met with Mr. Grossman to discuss the trusts and the lawsuit. He has billed the Defendants for 5.40 hours ($1,620.00) for the meeting. See Defendants' Exhibit 23.

Despite what Mr. Kaufman had done before on behalf of or for the benefit of the Defendants, on September 9, 2008, he e-mailed the Carters stating, "I am awaiting the final $10,000.00 payment before I start work. I will need it as soon as possible so I can draft up the Counterclaims and third-party claims." See Defendants' Exhibit 7.

On September 11, 2008, Mr. Carter drew a check for $10,000.00 payable to Kaufman Law (See Defendants' Exhibit 9), and the check was given to UPS for delivery to Mr. Kaufman's office in Fairfax. (See Defendants' Exhibit 1 admitted in evidence on January 22, 2009.)

On September 15, 2008, Mr. Kaufman began to draft responsive pleadings, but he did not intend to enter an appearance on behalf of the Defendants until he received the final check.

For some reason not explained by the evidence, the final $10,000.00 check was not delivered to Mr. Kaufman until the morning of September 19, 2008. Neither the Defendants nor Mr. Kaufman were at fault for the almost week delay in the check being delivered. This check was not deposited and credited to Mr. Kaufman's account until October 2, 2008. See Defendants' Exhibit 21.

Early on Friday, September 19, 2008, after receipt of the final check, Mr. Kaufman e-mailed the Carters stating: "Please review this document. I would like to get this (Answer, Counterclaim, and Third-Party Claim) in the mail today if possible." See Defendants' Exhibit 16.

Thereafter, Mr. Kaufman talked with the Carters, and, at 5:40 p.m., he e-mailed Ms. Carter stating, "O.K. I fixed these changes. Thank you." See Defendants' Exhibit 17.

On September 22, 2008, Mr. Kaufman had delivered by courier to the Clerk's Office of this Court the following (1) his letter dated September 22, 2008, which states in part, "Please accept for filing the enclosed Answer and Third-Party Claim. I have also enclosed 2 copies and a $179.00 check for the Third-Party Claim's filing fees." See Defendants' Exhibit 18; (2) pleadings styled "Answer, Grounds of Defense, Counterclaim, and Third-Party Claims of Defendants Brian and Carin Carter and Anna M. Furnival; (3) a check for $179.00.

Just before the Clerk's Office closed on September 22, 2008, someone from the Clerk's Office called Mr. Kaufman to tell him that he was $25.00 short on the filing fee for the third-party claim.

Mr. Kaufman testified that, as a result of the call from the Clerk's Office on September 22, 2008, he had a check for $25.00 plus an explanatory cover letter dated September 22, 2008, delivered to the Clerk's Office on the morning of September 23, 2008. However, Mr. Kaufman's letter of September 22, 2008, transmitting the responsive pleadings referred to above for filing and the check for $179.00 (Defendants' Exhibit 18) is not marked filed by the Clerk until September 25, 2008. Also, the letter with the check for $25.00 dated September 22, 2008 (Defendants' Exhibit 19) is not in the court file.

The responsive pleadings prepared by Mr. Kaufman are marked filed by the Clerk on September 25, 2008. Also, on September 25, 2008, the Clerk issued a receipt for $204.00 to Kaufman Law for the filing fee for the third-party claim (copy of receipt in court file).

On September 26, 2008 the Plaintiff filed a Motion for Entry for Judgment by Default together with a praecipe for it to be heard on Motions Day on October 3, 2008.

Counsel for the Plaintiff did not receive a copy of the responsive pleadings prepared by Mr. Kaufman until several days after the default judgment motion was filed. The certificate signed by Mr. Kaufman states that counsel for the Plaintiff was served with a copy thereof by mail on September 19, 2008.

On October 3, 2008, Ms. Dillow, counsel for the Plaintiff, appeared before me to be heard on the default judgment motion. I allowed Mr. Kaufman to participate by telephone from New Mexico. After hearing the argument of counsel, I granted the Plaintiff a default judgment and set *ex parte* proof for October 23, 2008. The default judgment grant order was entered that day.

On October 10, 2008, Mr. Kaufman filed a series of motions on behalf of the Defendants to accept the responsive pleadings he filed, vacate the default judgment, continue the *ex parte* proof hearing, and suspend the default judgment. Mr. Kaufman and Ms. Dillow appeared before me on October 20, 2008, to argue the motions. After considering counsel's arguments and representations, I granted the motion to suspend the default judgment until the motion to vacate the default judgment is decided. An order to this effect was entered October 20, 2008.

Ms. Furnival did not sign the retainer letter until October 28, 2008. Mr. and Mrs. Carter had signed it on September 4, 2008. The signed retainer letter was received by Mr. Kaufman on October 29, 2008. See Defendants' Exhibit 22. The signature page of the retainer letter contains a notation, "changed via Attachment A," but there is no such attachment attached to the retainer as it was admitted into evidence, and there is no evidence about the content of the attachment.

On December 9, 2008, Mr. Kaufman issued a statement directed to Mr. Carter for services rendered in this case in the amount of $5,070.00. See Defendants' Exhibit 23. The statement covers the period from September 2, 2008, to November 13, 2008; however, Mr. Kaufman wrote off $7,800.00 for all services after October 3, 2008, related to the default judgment issue. I will ignore Mr. Kaufman's editorial comment on page two of his statement about my default judgment decision.

In December 2008, Mr. Kaufman clearly held more funds in his trust account than would be needed to compensate him for his services as billed to the Defendants. There is no evidence as to whether his bill has been satisfied or as to the disposition of the funds in the trust account.

By order entered December 16, 2008, Mr. Kaufman and his firm were granted leave to withdraw, and Mr. Dunlap and his firm were substituted as counsel for the Defendants.

On January 20, 2009, the Defendants filed an "Amended Motion To Vacate Default Judgment and Motion for Extension of Time and Leave To File Amended Responsive Pleadings." The motion to vacate the default judgment previously filed by Mr. Kaufman for the Defendants had already been set for hearing on January 22, 2009.

The default judgment issue came before me on January 22, 2009. At the hearing the Plaintiff agreed that the case was before the Court on both the motion to vacate the default judgment filed in October 2008 by Mr. Kaufman and the amended motion filed by Mr. Dunlap on January 20, 2009. The hearing did not finish and was ultimately continued to March 4, 2009.

After hearing the evidence on January 22, 2009, and March 4, 2009, as well as the argument of counsel, I took the motions to vacate default judgment and for leave to file late responsive pleadings under advisement.

## Legal Analysis

The Defendants are asking the Court to set aside the default judgment and grant them leave to file late responsive pleadings, which will include a counterclaim and a third-party claim. The Defendants acknowledge that Mr. Kaufman filed their responsive pleadings late, but they argue that they should not be penalized for Mr. Kaufman's procrastination, lack of due diligence, and incompetent advice. They point out that no trial date has been set and no discovery has been propounded. Basically, the Defendants argue that it is unfair to enter a default judgment against them as a result of their attorney not properly representing them, when there is no real prejudice to the Plaintiff due to responsive pleadings filed six days late.

I do not agree with the Defendants.

Under Rule 3:19(a), a defendant who fails timely to file a responsive pleading within the time required by Rule 3:8, within 21 days after service, is in default. As noted above, Mr. and Mrs. Carter, who were served on August 14, 2008, were required to file responsive pleadings by September 3, 2008. Ms. Furnival, who was served on August 29, 2008, was required to file responsive pleadings by September 22, 2008.

It is obvious that Mr. Kaufman labored under the assumption that responsive pleadings were due to be filed for all three defendants by September 3, 2008. Counsel did not argue that an extension of time for Ms. Furnival to file was not required when Mr. Kaufman called Mr. Herring on September 2, 2008, and secured his agreement to a sixteen-day extension for filing responsive pleadings.

Also, counsel did not argue the issue that, even though Mr. Kaufman had his responsive pleadings delivered to the Clerk's Office on September 22, 2008 (still beyond the time agreed to by Mr. Herring), the Clerk's Office did not stamp them filed until September 25, 2008. There was no argument that the Clerk should have accepted for filing the Answer, Grounds of Defense, and Counterclaim on September 22, 2008, even though Mr. Kaufman had not tendered the correct filing fee for the third-party claim. I note that the Answer, Grounds of Defense, Counterclaim, and Third-Party Claim are all contained in one paper, as allowed by Rule 3:18(e). If they had been tendered to the Clerk within the 21 days, could everything but the third-party claim be deemed timely filed? It is an interesting question, but not applicable here because all four pleadings were not filed within the time period as agreed to by Mr. Herring.

Mr. Kaufman chose to place all four pleadings in one paper. When he did, he placed the Defendants in a position that the pleadings could not be deemed proper for filing until all things had been accomplished that were necessary for filing. One of those things was the payment of the proper filing fee for the Third-Party Claim that the Defendants elected to file in response to the Plaintiff's Complaint.

Further, when Mr. Kaufman was advised that he had not tendered the amount needed for the filing fee for the Third-Party Claim, it became his obligation to see that the Clerk received the correct fee and that the Clerk then took the pleadings for filing. When he merely had the second check delivered to the Clerk's Office, rather than taking it personally to see that it was accepted and the pleadings marked filed, then he ran the risk of when the Clerk would get around to doing what was necessary to accept the check as the correct filing fee and stamp the pleadings as filed.

Mr. Kaufman never explained why he felt that Mr. Herring's agreement to extend the date to file pleadings to September 19th meant he had until the close of business on September 22nd for filing. Also, Mr. Kaufman never filed a motion for leave to file late responsive pleadings or submitted to the Court an order granting such leave. No motion was ever filed by the Defendants until after default judgment was granted. Mr. Kaufman never explained why he never sought the entry of an order allowing the extension of time to file

responsive pleadings as agreed to by Mr. Herring. I think competent counsel would have done so because an examination of the papers in the Clerk's Office would reveal that the responsive pleadings filed by Mr. Kaufman for the Defendants were not filed within 21 days as required by Rule 3:8, and, as a result, under Rule 3:19(a), the Defendants are in default.

The Defendants are asking that this Court not penalize them because of what they allege is legal malpractice by Mr. Kaufman. They place all the blame and fault on Mr. Kaufman. However, the Defendants have conveniently ignored what they have done or not done.

For some reason, Mr. and Mrs. Carter did not talk to Mr. Kaufman until fifteen days after they were served with process. They never provided an explanation for the delay in seeking counsel. When they were served, they saw, or should have seen the language on the Summons requiring a response within twenty-one days; they never offered any evidence that they were not served with the Summons or that they did not read it. There were only six days left when they initially talked to Mr. Kaufman. The Defendants' delay in retaining Mr. Kaufman contributed to the last minute scrambling by Mr. Kaufman to get the responsive pleadings filed.

The Defendants' delay in contacting counsel, coupled with all the interactions between the Carters and Mr. Kaufman thereafter and leading up to the late filing of responsive pleadings, cannot be in any way attributed to the Plaintiff. When a defendant and his counsel embark on a series of negotiations regarding what counsel will do and when, they do so at their own risk. The Defendants knew of the twenty-one-day requirement. When Mr. Kaufman obtained the extension, the Defendants ran the risk that he would do what was necessary to file responsive pleadings within the extended period.

I think it is completely unfair to the Plaintiff, who has done nothing but comply with the law, to have to suffer because of the Defendants' delay in negotiating with and retaining their counsel, in their delay in paying counsel so he would be in a position to finally file responsive pleadings, and counsel's failure to do what was required to have the responsive pleadings timely filed.

I do not accept the Defendants' argument that there is no prejudice to the Plaintiff because a trial date has not been set and discovery has not yet commenced. No trial date has been set because the Plaintiff obtained a default judgment and set the case for *ex parte* proof. There is no reason for the Plaintiff to conduct discovery after the entry of a default judgment and after the Defendants filed their motions.

But even more so, there would be prejudice to the Plaintiff because he would suffer an unfair consequence of faithfully following the procedural rules while the Defendants disregard them. There should be no expectation

that the Plaintiff, for the convenience of the Defendants, would overlook the late filing, or that this Court would allow it. There is no question that Mr. Kaufman had not filed timely responsive pleadings when the Plaintiff filed his default judgment motion. There is no question that the Plaintiff had the right to move for default judgment. There is no question that the Plaintiff should not be faulted or prejudiced in any way for filing his default judgment motion only one week after the date by which his counsel had agreed that responsive pleadings could be filed. There is no prejudice to the Defendants because the Plaintiff properly scheduled argument on the default judgment on a motions day with proper notice within seven days after filing the motion for default judgment.

Rule 3:19(d)(1) does allow for relief from a default judgment during the period provided by Rule 1:1 for the modification, vacation, or suspension of a default judgment (as is the case here) after consideration of three things: (1) the extent and causes of the defendants' delay in tendering a responsive pleading; (2) whether service of process and actual notice of the claim were timely provided to the defendants; and (3) the effect of the delay on the plaintiff. All the aforesaid things have been considered above.

I find no merit in the argument that the Defendants should not be prejudiced because of alleged malpractice by the attorney they retained and in whom they placed their trust. There is no reason to relieve an attorney of a potential malpractice claim merely to protect a client without fault. The client has a remedy for attorney malpractice. Further, in this case, I do not feel that the Defendants were without fault in contributing to the events that led to the late filing. No one forced the Defendants into the agreement they reached with Mr. Kaufman before he would represent them. The method by which the Defendants chose to provide Mr. Kaufman with his required retainer was chosen at the Defendants' risk.

A further consideration to me is that, when Mr. Kaufman agreed to contact Plaintiff's counsel about an extension, he, in my opinion, became the Defendants' attorney with a duty to do what was necessary to protect their interests in this litigation. The Defendants argue that their delay in filing responsive pleadings was because Mr. Kaufman agreed to do only certain things (but not file the responsive pleadings) until the full retainer was paid. However, I would give this argument more consideration if Mr. Kaufman had adhered to the written agreement and had not done anything until the full retainer was paid.

I certainly understand that any attorney expects to be compensated for his services. I also understand the reason and need for retainers. But in this case, I find it almost unconscionable that Mr. Kaufman would do all the work

he did (*e.g.* meeting with Mr. Grossman for over five hours, eleven days before responsive pleadings were due) and then as the September 19th deadline approached he took the position that he would not file the responsive pleadings until he received the final $10,000.00. It appears on its face that Mr. Kaufman may have placed his own monetary interests ahead of his duties to his clients. Before September 19th, Mr. Kaufman had received much more in retainer funds than what he needed to cover his services through the filing of the responsive pleadings.

For the foregoing reasons, the Defendants' Motions filed October 10, 2008, to accept the responsive pleadings filed by Mr. Kaufman and to vacate the default judgment are denied. Further, the Defendants' Amended Motion To Vacate Default Judgment and Motion for Extension of Time and Leave To File Amended Responsive Pleadings, filed January 20, 2009, is denied.

Let Ms. Dillow prepare an order consistent herewith vacating the suspension of the default judgment order so that it becomes in full force and effect. She may also praecipe the case for a hearing on *ex parte* proof.